**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HEATHER M. HOFFMAN,**

                      Plaintiff,                5:13-cv-846
                                                            (GLS)
            v.

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                      Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Coughlin, Gerhart Law Firm | SCOT G. MILLER, ESQ. |
| P.O. Box 2039 | |
| Binghamton, NY 13902 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SANDRA M. GROSSFELD |
| United States Attorney | DAVID L. BROWN |
| 100 South Clinton Street | Special Assistant U.S. Attorneys |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Heather M. Hoffman challenges the Commissioner of Social Security's denial of her claim for a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Hoffman's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On August 24, 2010, Hoffman filed an application for DIB under the Social Security Act ("the Act"), alleging disability since December 11, 2009. (Tr.[1] at 52, 116-33.) After her application was denied, (*id.* at 62-66), Hoffman requested a hearing before an Administrative Law Judge (ALJ), which was held on March 21, 2012, (*id.* at 28-51, 69-72). On May 10, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-4, 6-27.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

Hoffman commenced the present action by filing her complaint on July 7, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 14.)

### III. Contentions

Hoffman contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 13-24.) Specifically, Hoffman claims that the ALJ erred in: (1) weighing the opinions of Hoffman's treating sources; (2) rendering a residual functional capacity (RFC) determination that is unsupported by substantial evidence; and (3) discounting her subjective complaints of pain due to her desire "to exercise her fundamental right to procreate." (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 14 at 8-19.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 10 at 2-12; Dkt. No. 14 at 3.)

3

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weighing Opinion Evidence

Hoffman first argues that the ALJ erred when she gave "very limited weight" to the opinions of Hoffman's treating sources. (Tr. at 19; Dkt. No. 10 at 13-19.) Hoffman claims that the ALJ failed to discuss the relevant factors for weighing medical opinions under the regulations and misapplied the law in this Circuit in discounting the opinions of her treating sources, in part, due to their use of "check a box" forms. (Dkt. No. 10 at 13-19.) The Commissioner counters, and the court agrees, that the ALJ properly weighed the opinions of Hoffman's treating sources and her decision to

4

afford them limited weight is supported by substantial evidence.[2] (Dkt. No. 14 at 8-14.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability.'" *Id*. (citation omitted).

Here, the record contains an RFC Questionnaire completed by treating neurologist Jody Stackman, who opined that, due to headaches, back pain, and cervical syndrome, Hoffman would be off task between thirty and fifty percent of the day. (Tr. at 562-64.) In addition, Dr. Stackman reported that Hoffman would likely be absent more than three days a month, and would be able to work only twenty hours a week, for three to four hours a day. (*Id.* at 563.) According to Dr. Stackman, Hoffman could occasionally lift and carry up to ten pounds, and, in an eight-hour workday, sit for two hours, stand for two hours, and walk for one hour. (*Id.* at 564.) The ALJ also had before her an RFC Questionnaire completed by treating nurse practitioner Shawnti Storm and cosigned by treating physician John Cooke. (*Id.* at 591-93.) In Storm and Dr. Cooke's opinion, Hoffman would be off task over fifty percent of the time and miss more than three days a month of work due to back pain and radiculopathy.

6

(*Id.* at 591-92.)  Hoffman could occasionally use her hands and feet, required frequent changing of positions between sitting, standing, and walking, and could occasionally lift and carry up to ten pounds.  (*Id.* at 593.)  They further opined that Hoffman could not consistently perform tasks or commit to a set schedule.  (*Id.*)

The ALJ gave both of these questionnaires "very limited weight" because they are not consistent with these treating sources' own notes and the longitudinal medical evidence of record.  (*Id.* at 19.)  The ALJ specifically noted that Hoffman's pain medication and TENS unit have been prescribed only on an as-needed basis.  (*Id.* at 18, 494, 499, 548.)  Further, in February 2012, drug testing of Hoffman was entirely negative, indicating that she was not taking any pain medication.  (*Id.* at 18, 539.)  The ALJ requested that Hoffman's counsel seek clarification from nurse practitioner Storm and Dr. Cooke regarding Hoffman's limitations due to pain given the results of this drug test, but no such clarification was provided.  (*Id.* at 19, 549-50, 591-93.)  Dr. Stackman's treatment notes indicate that, shortly after she began treating Hoffman, Hoffman's headaches significantly improved, and were not occurring frequently enough to warrant prophylactic treatment.  (*Id.* at 19, 522.)  EMG testing revealed no electrical

7

abnormalities suggestive of a cervical radiculopathy nor evidence of a median ulnar neuropathy or entrapment on Hoffman's symptomatic side. (*Id.* at 19, 518-19.) On several occasions, Dr. Stackman noted that Hoffman had good cervical range of motion with only mild restriction, normal motor strength with no weakness in her extremities, and a normal gait. (*Id.* at 19, 567-68, 572-73, 578-79.)

As the ALJ explicitly referenced 20 C.F.R. § 404.1527, as well as relevant social security rulings, undertook a thorough discussion of the medical and testimonial evidence of record, which suggested impairments less severe than those articulated in their RFC Questionnaires, and directly cited to treatment notes spanning their lengthy treating relationships, it is clear that she properly applied section 404.1527(c) and her assessment of the opinions of Drs. Cooke and Stackman is legally sound. (*Id.* at 18-20); *see* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Further, contrary to Hoffman's contention, the ALJ did not err in "criticizing the use of forms with check boxes," despite the fact that these forms were supported by "voluminous medical records." (Dkt. No. 10 at 16-18.) Instead, the ALJ properly considered that the questionnaires completed by

8

nurse practitioner Storm and Dr. Stackman contained minimal commentary explaining the basis for the conclusions contained therein, and were not supported by the treatment notes submitted by these medical sources. (Tr. at 19-20); *see* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion."); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Accordingly, the ALJ provided sufficient reasons for discounting the opinions of Drs. Stackman and Cooke, and her decision to do so is supported by substantial evidence.

## B. RFC Determination

Next, Hoffman contends that the ALJ's conclusion that she retained the RFC to perform sedentary work is not supported by substantial evidence. (Dkt. No. 10 at 20-22.) In particular, Hoffman asserts that the ALJ improperly relied on the vague opinion of the consulting examiner and failed to incorporate the effects of Hoffman's headaches into her RFC assessment. (*Id.*) The court disagrees.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC,

9

an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In this case, consulting examiner Megdad Zaatreh found Hoffman to be in no acute distress, with a steady gait and normal stance. (Tr. at 391.) Hoffman was able to walk on her heels and toes, squat halfway, change for the exam and get on and off the exam table without assistance, and rise from a chair without difficulty. (*Id.*) Hoffman's range of motion of her cervical and lumbar spine was reduced and straight leg raising was positive at seventy degrees on the right. (*Id.* at 392.) However, she had full range of motion of her shoulders, elbows, forearms, wrists, hips, knees and ankles, and her joints were stable and nontender. (*Id.*) Hoffman had physiological and equal deep tendon reflexes, no sensory deficits, and full strength in her upper and lower extremities. (*Id.*) Hoffman reported to Dr. Zaatreh that she cares for her personal hygiene daily, cooks meals twice a week, cleans her home twice a week, does laundry twice a week, and

shops once a week. (*Id.* at 391.) Based on his examination Dr. Zaatreh opined that Hoffman was moderately limited in her ability to walk, stand, climb, lift, squat, bend, and kneel, but was not limited in her ability to use her upper extremities or perform fine motor activities. (*Id.* at 393.)

Although Hoffman correctly argues that opinions from consultative examiners that a claimant has "mild" or "moderate" limitations, "without additional information," are "so vague as to render [the opinions] useless," *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by regulation on other grounds*, 20 C.F.R. § 404.1560(c)(2), Dr. Zaatreh's opinion is well supported by his extensive examination and is not in any way conclusory, *see Kinder v. Colvin*, No. 13-CV-06368, 2014 WL 4184820, at *7 (W.D.N.Y. Aug. 21, 2014); *Armstrong v. Comm'r of Soc. Sec.*, No. 05-CV-1285, 2008 WL 2224943, at *4, n.6 (N.D.N.Y. May 27, 2008). In addition to being supported by his own examination results, Dr. Zaatreh's opinion was also consistent with the other evidence in the record, such as the results of Hoffman's EMG and Dr. Stackman's examinations, as well as the drug test which indicated that Hoffman was not taking pain medications, and her reported activities. (Tr. at 391, 518-19, 539, 567-68, 572-73, 578-79.) Taken together this evidence supports the conclusion that, although

11

Hoffman suffered from back and neck pain, these impairments did not prevent her from working altogether. (*Id.* at 17-20.)

With respect to Hoffman's headaches, the ALJ clearly explained her reasons for discounting Hoffman's testimony that she suffers headaches "all the time." (*Id.* at 14, 18, 40.) Specifically, in May 2011, two months after she began treatment with Dr. Stackman, treatment notes reflect that Hoffman's headaches "dramatically improved in terms of frequency with reduction of her stress level and better sleep, and certainly her headaches are not occurring frequently enough that prophylactic treatment is warranted." (*Id.* at 522.) Thereafter, in August 2011, Dr. Stackman noted that Hoffman's headaches were significantly improved, occurred only two to three times a month, were less severe in nature, and within an hour of taking Aleve were gone or remarkably reduced. (*Id.* at 572-73.) Again, in March 2012, Dr. Stackman indicated that Hoffman's headaches remained improved, occurred episodically, responded to medication, and did not require any prophylactic treatment. (*Id.* at 568.) Thus, the ALJ's conclusion that headaches do not impose limits on Hoffman's ability to engage in basic work activities is supported by substantial evidence. (*Id.* at 14, 18.)

C. **Credibility Determination**

Finally, Hoffman argues that the ALJ "improperly used [her] desire to procreate as" a reason to deny her claim. (Dkt. No. 10 at 23-24.) According to Hoffman, the ALJ penalized her for wishing to exercise her fundamental right to procreate, and improperly reached a medical conclusion as to whether a person complaining of severe pain would wish to procreate. (*Id.*) Again, the court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily

activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, in making her credibility determination, the ALJ pointed out that Hoffman's testimony that she was trying to conceive a child was inconsistent with her allegations of disabling pain. (Tr. at 18, 50, 511, 513, 535.) According to the ALJ, Hoffman's contemplation of conceiving and carrying a pregnancy to term, as well as her intention to engage in some form of child care in the future, rebuts her testimony that she experiences severe, incapacitating pain. (*Id.*) As the Commissioner points out, "[c]ourts have consistently acknowledged that conceiving and caring for children relates to the ordinary activities of life" and, thus, have permitted the Commissioner to consider such evidence in assessing a claimant's ability to work. (Dkt. No. 14 at 18); *see Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (stating that evidence that a claimant sought to adopt another child during the period for which she claimed benefits supported the ALJ's

14

decision that the claimant was not disabled); *Louis v. Comm'r of Soc. Sec.*, No. 1:10-cv-973, 2012 WL 1579220, at *4 (W.D. Mich. Mar. 15, 2012) (holding that, although the decision whether or not to bear children falls within the constitutionally protected right to privacy, an ALJ may properly consider a claimant's ability to bear and care for children as it relates to her physical condition and ability to execute the ordinary activities of daily life); *see also Dombert v. Astrue*, 2010 WL 4878952, *5 (W.D.N.Y. Dec. 1, 2010) (holding that the ALJ properly determined that the claimant was not fully credible where the ALJ found that the claimant's attempt to get pregnant by using fertility treatment was not consistent with her complaints of debilitating back pain).

Accordingly, the court concludes that remand is not warranted here. Standing alone, her attempts to conceive do not create an independent basis for finding Hoffman not credible. However, taken as a whole, the ALJ's credibility determination is not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation marks and citation omitted)). The ALJ found that Hoffman's

credibility was undermined by inconsistencies between her treatment records, which indicated that her headaches had significantly improved and occurred only a few times a month, and her hearing testimony.  (Tr. at 18.)  In addition, the ALJ considered the objective medical evidence, opinion evidence, Hoffman's treatment, including medication, and Hoffman's reported daily activities.  (*Id.* at 18-19); *see* 20 C.F.R. § 404.1529(c)(2), (3)(i),(iv), (v),(vii).

### D.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Hoffman's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 20, 2014
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

16